**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1261**

_____

JOHN KOONTZ, on behalf of Himself and all others similarly situated,

Plaintiff – Appellant,

v.

SN SERVICING CORPORATION,

Defendant – Appellee.

------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS; NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER; NATIONAL CONSUMER LAW CENTER,

Amici Supporting Appellant.

DEFENSE TRIAL COUNSEL OF WEST VIRGINIA INC.,

Amicus Supporting Appellee.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. John Preston Bailey, District Judge. (5:23-cv-00363-JPB)

_____

Argued:  December 11, 2024                                        Decided:  April 4, 2025

_____

Before HARRIS, HEYTENS, and BERNER, Circuit Judges.

_____

Reversed in part and remanded by published opinion. Judge Heytens wrote the opinion, which Judge Harris and Judge Berner joined.

———————————

**ARGUED:** James Bruce Stoneking, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellant. Alex J. Zurbuch, FROST BROWN TODD LLP, Charleston, West Virginia, for Appellee. **ON BRIEF:** Jason E. Causey, Richard A. Monahan, BORDAS & BORDAS, PLLC, Wheeling, West Virginia; Patricia M. Kipnis, Cherry Hill, New Jersey, Jonathan R. Marshall, Denali S. Hedrick, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellant. Blake N. Humphrey, FROST BROWN TODD LLP, Charleston, West Virginia, for Appellee. Edward C. Boltz, THE LAW OFFICES OF JOHN T. ORCUTT, P.C., Durham, North Carolina, for Amici National Association of Consumer Bankruptcy Attorneys, National Consumer Bankruptcy Rights Center, and the National Consumer Law Center. Dallas F. Kratzer III, Shaina L. Richardson, J. Zachary Balasko, Keeleigh S. Huffman, STEPTOE & JOHNSON PLLC, Columbus, Ohio; Grace E. Hurney, JACKSON KELLY PLLC, Charleston, West Virginia, for Amicus Defense Trial Counsel of West Virginia Inc.

———————————

2

TOBY HEYTENS, Circuit Judge:

SN Servicing Corporation (SNSC) sent John Koontz two letters about his residential mortgage loan. Koontz sued, asserting SNSC's actions violated the federal Fair Debt Collection Practices Act (FDCPA) and a similar West Virginia law. The district court dismissed Koontz's complaint, concluding that Koontz's Chapter 7 bankruptcy discharge meant he was no longer a "consumer" with a "debt" under the relevant statutes. Because we conclude that view is erroneous, we reverse in part and remand for further proceedings.

## I.

In 2008, Koontz obtained a mortgage secured by real property in West Virginia. The agreement included a provision stating that if Koontz "fail[ed] to pay any scheduled payment in full within 10 days of its due date," he must also "pay a late charge of 5.0% of the unpaid amount of [the] installment, not to exceed $15.00." JA 21. At some point, SNSC took over responsibility for collecting payments on Koontz's loan.

Almost a decade later, Koontz filed a Chapter 7 bankruptcy petition. A bankruptcy court entered a discharge order, which included standard language explaining such orders "[g]enerally . . . remove[] the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed." JA 33.

More than five years after the discharge order, Koontz got a letter from SNSC. Above the salutation "Dear JOHN KOONTZ" were three sentences written in all capital letters. JA 35. Those sentences read:

> *YOU ARE HEREBY NOTIFIED THAT SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO*

3

> *COLLECT THIS DEBT. ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.*
>
> *IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.*

*Id.* The letter explained that a late fee of $23.67 had "been assessed and charged" to Koontz's "loan account." *Id.* The letter's body also said "[i]f you . . . have received a discharge in bankruptcy, this notice is not intended as an attempt to collect a debt as a personal liability, but is solely an effort to retain whatever rights we hold in the property that secures the debt, as evidenced by the security instrument." *Id.*

A month later, Koontz got another letter from SNSC saying a payment he made was "not being credited" to his loan account. JA 36. The second letter contained the same capitalized language as the first, this time printed above the salutation "Dear Borrower name." *Id.*

Eight months after receiving the second letter, Koontz filed a putative class action in West Virginia state court, accusing SNSC (and another collection agency with which Koontz later settled) of violating the FDCPA and a similar West Virginia statute. The defendants removed the case to federal court and SNSC moved to dismiss.

The district court granted SNSC's motion to dismiss both claims. The court concluded Koontz's federal claim failed in full for two reasons and in part for a third. First, the court determined that, after the Chapter 7 discharge order, Koontz was no longer a "consumer" with a "debt" as defined in the FDCPA. Second, the court held the two letters

4

Koontz received from SNSC did not—as a matter of law—constitute attempts to collect a consumer debt. Third, the court concluded Koontz failed to adequately plead a "false, deceptive, or misleading representation" under 15 U.S.C. § 1692e, but that he had adequately pled use of "unfair or unconscionable means" under 15 U.S.C. § 1692f. Having disposed of the federal claim, the district court concluded Koontz's state-law claim failed because his Chapter 7 bankruptcy also prevented him from being a "consumer" as defined under West Virginia law.

Koontz appeals, challenging the district court's dismissals of both his federal and state claims. "We review the district court's grant of a motion to dismiss for failure to state a claim de novo, applying the same standards as the district court." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024).

## II.

We start with Koontz's federal claim. We conclude the district court correctly dismissed the portion of that claim arising under 15 U.S.C. § 1692e but erred in dismissing the portion arising under 15 U.S.C. § 1692f. Unlike the district court, we hold that Koontz was still a "consumer" with a "debt" even after his Chapter 7 discharge and that Koontz plausibly alleged the two letters constituted attempts to collect on that debt. But we agree with the district court that the allegations in Koontz's complaint were inadequate to state a claim under Section 1692e and adequate to state a claim under Section 1692f.

## A.

The two provisions of the FDCPA cited in the complaint regulate attempts to collect "debt[s]." 15 U.S.C. §§ 1692e, 1692f. The statute defines "debt" as "any obligation or

5

alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The FDCPA further defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3).

No one disputes Koontz is a natural person. The threshold question, therefore, is whether he is "obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Unlike the district court, we conclude the answer is yes.

The Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), controls this issue. Like this case, *Johnson* involved the legal status of a mortgage lien "once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding." *Id.* at 80. True, the specific question in *Johnson*—whether "the mortgage lien in such a circumstance remains a 'claim' against the debtor that can be rescheduled under Chapter 13"—was different from the one here. *Id.* But the Court's rationale in *Johnson* bears directly on the question before us.

The *Johnson* Court began by reaffirming that whether the creditor has a "right to payment" under Chapter 13 of the Bankruptcy Code turns on the same question we must answer here: whether the debtor still has "an enforceable obligation" even after a Chapter 7 discharge. 501 U.S. at 83 (quotation marks removed). The Court answered that question yes. "Even after the debtor's personal obligations" on the underlying loan "have been extinguished" via a Chapter 7 discharge, the Court stated that "there can be no doubt that the surviving mortgage interest corresponds to *an 'enforceable obligation' of the debtor*."

6

*Id.* at 84 (emphasis added). This is so, the Court explained, because—even post-discharge—"the mortgage holder still retains a right to payment in the form of its right to the proceeds from the sale of the debtor's property" and "the creditor's surviving right to foreclose on the mortgage can be viewed as a right to an equitable remedy for the debtor's default on the underlying obligation." *Id.* (quotation marks removed).

So too here. Like the court of appeals in *Johnson*, the district court "erred in concluding that the discharge of [Koontz's] *personal liability* on his promissory notes constituted the complete termination of [SNSC's] *claim* against [Koontz]." 501 U.S. at 84. Instead, the Chapter 7 "discharge extinguishe[d] only one mode of enforcing [SNSC's] claim—namely, an action against [Koontz] *in personam*—while leaving intact another—namely, an action against [Koontz] *in rem*." *Id.*

SNSC tries to distinguish *Johnson* by asserting that "a continuing *in rem* obligation on real property is not a *personal* obligation that cloth[es] Koontz with 'consumer' status under the FDCPA." SNSC Br. 26. But that argument runs headlong into another Supreme Court decision, this time *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019). Yes, any money SNSC obtained in a foreclosure sale would technically come from Koontz's property rather than Koontz personally. But *Obduskey* notes that nothing in the FDCPA "requires that payment on" an otherwise-covered "debt come *from a debtor*" personally and that "foreclosure *is a means of collecting a debt." Id.* at 474–75 (quotation marks removed; emphasis added). Although Koontz is no longer personally obligated to pay the mortgage after his Chapter 7 discharge, the *in rem* obligation—to use the proceeds of any sale of his house to pay off the mortgage—remains. See *Johnson*, 501 U.S. at 84. The

7

district court thus erred in concluding Koontz is not a "consumer" with a "debt" under the FDCPA.

B.

The district court also erred in concluding Koontz failed to plausibly allege SNSC was engaged in collection activity. See, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation marks removed)).

Despite forbidding "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. §§ 1692e, 1692f, the FDCPA does not define what it means to collect or attempt to collect a debt. Lacking further guidance, we apply a "commonsense inquiry that evaluates the nature of the parties' relationship, the objective purpose and context of the communication, and whether the communication includes a demand for payment." *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (alterations and quotation marks removed).

Koontz plausibly alleged the letters he received constituted debt collection activity. SNSC admits it "is a 'debt collector' within the meaning of the FDCPA," JA 47, and its letters referred to the loan Koontz held as a "debt," JA 35, 36. The letters also announced their purpose: SNSC was "attempting to collect this debt." *Id.* The first letter also included a demand for payment, telling Koontz "certain fees have been assessed and charged to the aforementioned loan account within the past 30 days." JA 35.

8

To be sure, the letters also addressed the possibility that Koontz may have "received a discharge in bankruptcy" and may not have "reaffirmed" the underlying loan. JA 35, 36. But even in that situation, the letters did not disclaim the notion that SNSC was seeking to collect a debt. Instead, they said that, in such a case, the letters were "not and should not be construed to be an attempt to collect such a debt as your personal liability," but were "instead a step in *the enforcement of a mortgage lien against your property*." *Id.* (emphasis added). A simpler way to put the italicized words is *foreclosure*, and, as we have noted, "foreclosure is a means of collecting a debt" under the FDCPA. *Obduskey*, 586 U.S. at 474–75. We thus conclude SNSC's letters were efforts to collect a debt under the statute.

SNSC responds by citing this Court's unpublished decision in *Lovegrove v. Ocwen Home Loans Servicing, LLC*, 666 Fed. Appx. 308 (4th Cir. 2016). That decision, of course, has "no precedential value" and is "entitled only to the weight" generated "by the persuasiveness of [its] reasoning." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (quotation marks removed).

We conclude *Lovegrove* has minimal persuasive value here because the circumstances are materially different. First, the governing legal standards are not the same because *Lovegrove* involved a motion for summary judgment while this case involves a motion to dismiss. See 666 Fed. Appx. at 311; see also *Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024) (discussing the differences between the two standards). Second, although the letters in *Lovegrove* and in this case both mentioned bankruptcy, their language was radically different. In *Lovegrove*, the letters said nothing about mortgage liens that would survive bankruptcy and instead advised that the letters were "for

9

informational purposes only" if the recipient had obtained a bankruptcy discharge. 666 Fed. Appx. at 310. Here, in contrast, the letters said that—even if Koontz had "previously received a discharge in bankruptcy"—the letters were still "a step in the enforcement of a mortgage lien against your property." JA 35, 36. We cannot say as a matter of law that the letters SNSC sent were merely "providing an updated account summary and not demanding payment." *Lovegrove*, 666 Fed. Appx. at 312 n.5.

C.

We turn next to whether Koontz adequately pled that SNSC engaged in an act or omission prohibited by the FDCPA. The district court concluded Koontz had not sufficiently alleged a violation of 15 U.S.C. § 1692e but had sufficiently alleged a violation of 15 U.S.C. § 1692f. We agree.

Section 1692e forbids debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and describes 16 types of conduct as "a violation of this section." 15 U.S.C. § 1692e. But neither Koontz's complaint nor his response to SNSC's motion to dismiss identifies which of these 16 subsections he believes SNSC's conduct violated or even *which* "representation[s] or means" Koontz asserts were "false, deceptive, or misleading." What is more, the most relevant portion of Koontz's complaint refers only to an action— "charging late fees in excess of those allowed"—rather than any sort of misrepresentation. JA 16. We thus agree that Koontz failed to "provide a short and plain statement showing

10

that [he] is entitled to relief" under Section 1692e. JA 230.[*]

Koontz's claims under Section 1692f fare better. That provision forbids debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt" and identifies eight examples of "conduct" that "is a violation of this section." 15 U.S.C. § 1692f. The first example is: "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

Like the district court, we conclude Koontz plausibly accused SNSC of engaging in that sort of conduct. Most obviously, the complaint asserts that—although the underlying contract capped any late fees at $15.00—"[o]n several occasions, [SNSC] assessed and collected late fees of $23.67, in violation of the contract and applicable law." JA 10. The complaint also alleges that, despite being "required to credit all payments made in accordance with the terms of [Koontz's] contract," SNSC "refused to accept certain payments" when Koontz "attempted to make a full payment." JA 10–11. We conclude Koontz plausibly accused SNSC of conduct violating Section 1692f.

---

[*] In a post-argument letter, Koontz "advise[s]" that his claims arise under Section 1692e(2)(A), which prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." ECF 69 at 1. But "the proper use of letters filed under Federal Rule of Appellate Procedure 28(j) is to alert the court to new authority that has come to a party's attention *after* briefing or oral argument," and "litigants may not use post-argument letters as a means to advance new arguments couched as supplemental authorities." *United States v. Heyward*, 42 F.4th 460, 470 n.6 (4th Cir. 2022) (quotation marks removed). The document whose sufficiency SNSC's motion challenged was Koontz's complaint, which was filed long before the oral argument here. In any event, neither paragraph from the complaint identified in Koontz's post-argument letter says anything about how SNSC described the character, amount, or legal status of any debt.

11

III.

We also reverse the district court's dismissal of Koontz's state-law claim. The court's rationale for dismissing the state-law claim mirrored its first reason for dismissing the federal-law claim: that because Koontz had received a Chapter 7 discharge, he was no longer a "consumer" who was "obligated to pay any debt." W. Va. Code §§ 46A–5–101(1), 46A–2–122(a); see JA 232–34. The parties seem to agree that—at least on this point— Koontz's federal and state claims rise or fall together. We thus reverse the district court's dismissal of the state-law claim for the same reason we reverse in part its dismissal of the federal-law claim.

*      *      *

The judgment is reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*